UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL D. MARKHAM,

                                        Plaintiff,            Case # 19-cv-6930-FPG

v.                                                                  DECISION AND ORDER

MARK CHAUVIN BEZINQUE, et al.,

                                        Defendants.
_____

## INTRODUCTION

On December 27, 2019, *pro se* Plaintiff Michael Markham commenced this action pursuant to 42 U.S.C. § 1983[1] against former New York State Supreme Court Justice Kenneth R. Fisher, Plaintiff's ex-wife's former attorney Mark Chauvin Bezinque, and attorneys for the children Lisa B. Morris and Edward W. Riley (collectively, "Defendants") for various due process violations arising out of his lengthy and contentious divorce and custody litigation.[2] ECF No. 1.

Before the Court are Defendants' motions to dismiss, ECF Nos. 9, 11, 12,[3] and Plaintiff's motion for miscellaneous relief, ECF No. 18.

## BACKGROUND

Plaintiff's amended complaint does not contain a cogent recitation of the facts giving rise to his legal claims. Instead, he attaches over 100 pages of exhibits to fill in the blanks. The facts described below are derived from those exhibits.

---

[1] Plaintiff also purported to bring claims under 18 U.S.C. § 241 and 18 U.S.C. § 242, which are are criminal statutes. Because there is no private right of action for either statute, *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006), those claims are dismissed.

[2] Plaintiff brought a similar action against other individuals related to his divorce proceedings in December 2019. Case No. 20-cv-6039. That case is also pending before the Court.

[3] Attorney Morris and Attorney Riley retained the same attorney. That attorney filed a motion to dismiss on behalf of both Morris and Riley, ECF No. 12, but at the time the motion was filed, Riley had not yet been served. Riley was served on May 1, 2020, and his attorney renewed his arguments in support of his motion to dismiss, ECF No. 35.

The exhibits reveal that Plaintiff and his ex-wife Diane DeLong were involved in divorce proceedings before New York Supreme Court Justice Kenneth Fisher beginning in 2015. Plaintiff alleges that during those proceedings, Justice Fisher and other individuals involved with the case fabricated a hearing and trial that never occurred. *See* ECF No. 17 at 21-22 (in which Plaintiff's outgoing attorney Mott indicates to incoming attorney Sayers that "Fisher says he held a Lincoln Hearing. He refers to 'Mother's testimony, but there is no transcript in existence and no reference to a default hearing or notice of default hearing. In talking to [Bezinque] he admitted that there was no hearing"). Plaintiff says that after he fired his own attorney, Justice Fisher precluded Plaintiff "from offering any proof on any disputed issue of fact" with "full knowledge that [Plaintiff] was now without representation." *Id.* at 62. The exhibits Plaintiff attaches to the amended complaint also indicate that Justice Fisher jailed Plaintiff for contempt. *Id.* Plaintiff also alleges that attorney for the children, Lisa Morris, erroneously argued to Justice Fisher that DeLong should have sole custody of Plaintiff's minor children. *Id.* at 27.

On December 20, 2016, following Plaintiff's default, Justice Fisher issued a decision and order granting divorce and awarding custody. *Id.* at 115-32. Justice Fisher noted that Plaintiff "defaulted in his required appearance at the trial, and otherwise offered no proof except via inadmissible unsigned and unsworn letters (with attachments) submitted to the court." *Id.* at 115. In September 2017, the case was transferred to the late Justice Elma A. Bellini, who vacated that judgment of divorce. *Id.* at 71.

The matter was then transferred to Justice Dollinger. Plaintiff, represented by Attorney Mott, made an application to vacate the previous proceedings. On October 31, 2017, despite that the judgment had been vacated by Justice Bellini, Justice Dollinger granted the application to vacate the previously-granted divorce and reappointed Morris as attorney for the children. *Id.* at

53-55. Plaintiff sought Justice Dollinger's recusal, which Justice Dollinger declined to provide. *Id.* at 37-38.

At Plaintiff's request, Justice Dollinger set a show cause hearing for the end of October 2018. Plaintiff sought the disqualification of the new attorney for the child, Edward Riley, and Plaintiff's own attorneys, and again requested the recusal of Justice Dollinger. *Id.* at 50-51.

Plaintiff reported the alleged misconduct of judges and attorneys involved in the divorce proceedings—including DeLong's first attorney Mark Bezinque—numerous times to state and federal agencies. *Id.* at 57-66. While these agencies acknowledged the complaints, they do not appear to have taken any action.

Prior to trial in December 2018, Plaintiff, then proceeding *pro se*, and DeLong, represented by a new attorney, together with the children's attorney, Riley, reached a settlement in open court resolving the issues between them. *Id.* at 71. On April 3, 2019, Justice Dollinger issued a "Judgment of Absolute Divorce," which incorporated the parties' stipulated terms and which was filed with the Monroe County Clerk. ECF No. 30 at 68-77.

Plaintiff filed his complaint on December 27, 2019. ECF No. 1. On March 9, 2020, Plaintiff filed an amended complaint, which is the same as the original complaint in all respects except for the removal of his request for "injunctive relief in the form of referral for criminal prosecution and parental rights." ECF No. 17 at 1. Plaintiff now seeks monetary damages in the amount of $12 million. *Id.* at 7.

Plaintiff asserts that Defendants "willfully and knowingly conspired to deprive Plaintiff of his Constitutional Right to Due Process" by "fabricating evidence including Lincoln Hearings and a Trial that the facts will show never actually occurred." ECF No. 17 at 9. He claims that Defendants conspired by way of false affidavit and false testimony to litigate the custody of

3

Plaintiff's minor children in the State of New York rather than the State of Hawaii," while knowing that Hawaii was the children's state of residence. *Id.* Plaintiff also alleges that "Defendants conspired to destroy all of the Court Records . . . in an attempt to obfuscate their collusion and illegal behaviour [sic] that was well outside of the official capacity and duties of officers of the Court." *Id.*

Defendants, represented by various counsel, moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 9, 11, 12. Having accepted the amended complaint as the operative pleading, the Court will analyze these motions to dismiss in light of the amended complaint. The Court will then address Plaintiff's motion for miscellaneous relief. ECF No. 18.

## LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Bryant v. Roosa*, No. 15-CV-440-FPG, 2016 WL 320990, at *2 (W.D.N.Y. Jan. 25, 2016) (quoting another source). A claim "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting another source). The Court may refer to evidence outside of the pleadings in determining a Rule 12(b)(1) motion. *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 393 (W.D.N.Y. 2008).

4

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## DISCUSSION

### I. Motions to Dismiss

Defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The Court addresses the Rule 12(b)(1) arguments first because it is required to address whether it has subject matter before proceeding to the merits.

### A.     Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)[4]

Defendants advance a number of jurisdictional arguments to support their contention that the claims against them should be dismissed under Rule 12(b)(1). They argue that the Court does not have subject matter jurisdiction over Plaintiff's claims under (1) the *Rooker-Feldman* doctrine and (2) the domestic relations exception.

First, Defendants suggest that the claims against them are precluded by the *Rooker-Feldman* doctrine, which bars cases brought by losing parties in state court actions complaining of injuries caused by state court judgments. *Wik v. City of Rochester*, 632 F. App'x 661, 662 (2d Cir. 2015) (summary order). The Court agrees in part and disagrees in part.

The *Rooker-Feldman* doctrine precludes a district court from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998) (footnotes and citations omitted); *see also id.* at 703 ("Injury due to a state court decision remains the essential touchstone in determining the applicability of the *Rooker-Feldman* doctrine.").

Based on *Exxon Mobil*, the Second Circuit distilled four requirements for the application of the *Rooker-Feldman* doctrine, two of which may be described as procedural and two which may

---

[4] At the outset, the Court notes that despite Plaintiff's assertion that the Court has jurisdiction over this case under both federal question and diversity jurisdiction, only federal question applies because Plaintiff's claims appear to arise exclusively out of alleged federal constitutional violations under 42 U.S.C. § 1983.

be deemed substantive. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (citation, footnote, internal quotation marks and brackets omitted).

Here, the first and fourth elements are met but the second and third are a closer call. With respect to the first element, Plaintiff lost in state court when Justice Dollinger issued a Judgment of Divorce against him, even though it was the product of a stipulation. *Wittich v. Wittich*, No. 06CV1635(JFB)(WDW), 2006 WL 3437407, at *3 (E.D.N.Y. Nov. 29, 2006) (deeming the plaintiff a losing party where he sought to overturn a settlement on the basis that it violated his rights). With respect to the fourth element, the state court judgment was entered months before Plaintiff filed this lawsuit.

It is unclear, however, that Plaintiff's injuries were *caused* by the state court judgment. To be sure, Plaintiff challenges conduct that occurred during the state court proceedings and the challenged conduct may have contributed to or culminated in the state court judgment. But it is not clear that Plaintiff has invited the district court to review and reject the state court judgment itself. Initially, Plaintiff's complaint sought injunctive relief vacating the judgment of divorce. Defendants moved to dismiss based on that complaint. Without question, such relief would have required the Court to review and reject the state court's conclusions. In response to Defendants' motions, however, Plaintiff removed his request for injunctive relief, leaving only his request for money damages for alleged constitutional violations, such as conspiring to conceal certain allegedly fabricated divorce proceedings. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 515

7

(E.D.N.Y. 2010) (holding that Second Circuit precedent "suggest[s] that a plaintiff's claims seeking only monetary damages or prospective-only relief against court procedures rather than modification of a family court's temporary custody or other orders would not run afoul of the *Rooker-Feldman* doctrine"); *Dowlah v. Dowlah,* No. 09 Civ. 2020, 2010 WL 889292, at *2 (E.D.N.Y. Mar. 10, 2010) (same). He avers that his claims are not matrimonial in nature; they are based solely on a deprivation of his constitutional rights. ECF No. 17 at 1. While evaluating these allegations may require examination of events that occurred during the proceedings, it is not clear that the Court here would necessarily be required to review and reject the state court judgment itself. *See McKnight,* 699 F. Supp. 2d at 515 ("The doctrine only applies where the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment." (internal quotation marks omitted)). This is so especially because, while Justice Fisher issued the first Judgment of Divorce, that judgment was later vacated and superseded by an order from Justice Dollinger, who is not a party to this action.

Therefore, it does not appear that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims. However, to the extent Plaintiff asks the Court to review and reject any previous state court judgment, the *Rooker-Feldman* doctrine would indeed divest the Court of subject matter jurisdiction.

Second, Defendants argue that the domestic relations exception divests the Court of subject matter jurisdiction because this case involves divorce and child custody disputes that were the subject of state court litigation. *See* ECF No. 9-1 at 4-5; ECF No. 12-4 at 3-5. The Court disagrees.

The Second Circuit has held that the domestic relations exception only applies to cases whose basis for jurisdiction is diversity, not federal question. *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019) ("[T]he domestic relations exception clearly does not apply to this case

because it is before this Court on federal question jurisdiction, not diversity." (quoting another source)). Because this case is premised on a federal question arising out of 42 U.S.C. § 1983, the domestic relations *exception* does not divest the Court of subject matter jurisdiction.

However, in *Deem*, the Second Circuit went on to conclude that the domestic relations *abstention* doctrine may allow a federal court to decline to exercise subject matter jurisdiction over claims that are "on the verge of being matrimonial in nature" where "there is no obstacle to their full and fair determination in state courts." 941 F.3d at 623 (quoting *American Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990)). Because, as explained below, the Court concludes that Plaintiff's amended complaint has failed to state a claim, it will not reach whether it should abstain from exercising subject matter jurisdiction due to the domestic relations abstention doctrine.

For these reasons, the Defendants' motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are GRANTED to the extent the amended complaint requires the Court to review and reject a state court judgment. In all other respects, Defendants' motions to dismiss for lack of subject matter jurisdiction are DENIED.

      **B.**      **Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

Defendants also move to dismiss the claims against them for failure to state a claim pursuant to Rule 12(b)(6). The allegations against Defendants are similar, but because they differ slightly, the Court will address each Defendant separately. However, the Court concludes that the claims against each Defendant should be dismissed.

           **i.**      **Kenneth R. Fisher (ECF No. 9)**

Plaintiff alleges that Justice Fisher fabricated a hearing and trial and "acted well outside the scope of his official duties . . . when he conspired with the other Defendants to rid his official chamber file of any incriminating documents." ECF No. 17 at 9-10.

Plaintiff's claims against Justice Fisher must be dismissed because Justice Fisher is entitled to absolute judicial immunity.  Courts have routinely found state court judges immune from suit for similar conduct involving divorce and custody-related hearings and issues.  *See Leathersich v. Cohen*, No. 18-CV-6363, 2018 WL 3537073, at *2 (W.D.N.Y. July 23, 2018) (concluding that monetary and injunctive relief was not available against state court judge overseeing divorce proceedings because judge's acts were "all quintessential judicial functions that, even where performed incompetently or for improper purposes, cannot form the basis of a suit against the judicial officer"), *appeal dismissed*, No. 18-2600, 2019 WL 994360 (2d Cir. Jan. 30, 2019); *see also Anthony Pappas for Cong. v. Lorintz*, No. CV184199JSAKT, 2019 WL 4396589, at *13 (E.D.N.Y. Aug. 2, 2019) ("As an initial matter, [plaintiff] cannot raise a viable claim against [the divorce judge] because as a judicial officer, [he] is shielded from suit by absolute judicial immunity."), *Report and Recommendation adopted sub nom.* 2019 WL 4396761 (E.D.N.Y. Aug. 26, 2019).

"Absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority."  *Renner v. Stanton*, No. 13-CV-01676 DLI, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (quoting another source).  Rather, "[j]udicial immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were in the complete absence of all jurisdiction."  *Id.*

Plaintiff asserts that Justice Fisher's alleged actions or inactions "happened outside" of his "official mandate as a sitting judge."  ECF No. 17 at 9.  But what Plaintiff challenges—holding a hearing and keeping records, or not—is firmly within the the purview of a judge.  Plaintiff's allegations against Justice Fisher are therefore barred by absolute judicial immunity.  *See Levine*

*v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (neither claims that a judge's decision was "biased and prejudicial" nor that proceedings were conducted "in an irregular or erroneous manner" abrogates absolute immunity). Justice Fisher's motion to dismiss, ECF No. 9, is therefore GRANTED.

### ii.     Lisa B. Morris (ECF No. 11)

Plaintiff alleges that Morris, a former attorney for the children, "willfully participated and contributed to the conspiracy against Plaintiff by knowingly submitting false sworn testimony" regarding hearings "that she knew never occurred." ECF No. 17 at 9.

To support a federal claim for deprivation of a constitutional right under 42 U.S.C. § 1983, "the conduct at issue must have been committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). A private person is generally not considered a state actor unless: (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (2) the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies"; or (3) "the entity has been delegated a public function by the state." *Justice v. King*, No. 08-CV-6417-FPG, 2015 WL 1433303, at *15 (W.D.N.Y. Mar. 27, 2015), *aff'd*, 628 F. App'x 58 (2d Cir. 2016).

Here, however, Morris is *not* a state actor. *Agron v. Douglas W. Dunham, Esq & Assocs.*, No. 02 CIV. 10071 (LAP), 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor."). Her appointment as an attorney for the children does not convert her into one. *See Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must

exercise independent professional judgment on behalf of the clients they represent."). Nor does Plaintiff set forth any argument that Morris should be converted into one using the three tests described above. Rather, Plaintiff appears to argue that Morris conspired with state actors to deprive him of his constitutional rights.

"[T]o demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010). "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, . . . but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see Young*, 705 F. Supp. 2d at 197 ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.").

Plaintiff's allegations are vague and conclusory. Far from including any facts regarding Morris's personal involvement in any conspiracy, Plaintiff merely alleges that Morris "willfully participated and contributed to the conspiracy against Plaintiff by submitting false sworn testimony." ECF No. 17 at 9. That is not enough to survive a motion to dismiss. *See Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). Nor has Plaintiff established any overt, concerted act on the part of Morris to give rise to § 1983 liability. That Justice Fisher found

in favor of Plaintiff's ex-wife—a determination that was later vacated and resolved by stipulation of the parties—does not support a conspiracy between Defendants. *See Combier v. New York*, No. 09 CIV. 5314 RJH FM, 2010 WL 3785130, at *15 (S.D.N.Y. Aug. 25, 2010) ("As a matter of law, the mere fact that a court took action in favor of a party in a litigation before it is insufficient to establish joint action or a conspiracy with that party.").

Morris's motion to dismiss for failure to state a claim, ECF No. 11, is therefore GRANTED.

### iii. Edward Riley (ECF No. 11)

Plaintiff alleges that former attorney for the children Edward W. Riley "conspired with his legal colleagues," to "cover up the fraud." ECF No. 17 at 8. Specifically, Plaintiff claims that "Riley knew that the Lincoln Hearings and Trial that formed the basis for the extreme parental isolation of Plaintiff from his children were fabricated." *Id.*

Like Morris, Riley is a private actor. Plaintiff's claim that Riley participated in a conspiracy to deprive him of his constitutional rights is vague and entirely conclusory. For the same reasons stated above with respect to the other Defendants, Riley's motion to dismiss, ECF No. 11, is GRANTED.

### iv. Mark Chauvin Bezinque (EC No. 12)

Finally, Plaintiff alleges that his ex-wife's former attorney, Bezinque, "fabricated evidence including Lincoln Hearings and a Trail [sic] that the facts will show never occurred." ECF No. 17 at 9.

Again, Plaintiff has not set forth any allegations that give rise to Bezinque's liability under 42 U.S.C. § 1983 as a private attorney. Plaintiff's claim that Bezinque participated in a conspiracy

to deprive him of his constitutional rights is vague and conclusory. Bezinque's motion to dismiss, ECF No. 12, is GRANTED.

## II. Motion for Miscellaneous Relief (ECF No. 18)

As explained above, the Court grants Defendants' motions to dismiss. Therefore, Plaintiff's request that Court deny the motions to dismiss, ECF No. 18, is DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, ECF Nos. 9, 11, 12, are GRANTED to the extent the amended complaint requires the Court to review and reject a state court judgment and DENIED in all other respects.

Defendants' motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, ECF Nos. 9, 11, 12, are GRANTED. Plaintiff's motion for miscellaneous relief, ECF No. 18, is DENIED AS MOOT.

Because Plaintiff amended his complaint in response to Defendants' motions, the Court declines to provide him with another opportunity to do so. The Clerk shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 18, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court